## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

SHAQUILLE RICHARDSON,

    *Petitioner,*

    v.

UNITED STATES OF AMERICA,

    *Respondent.*

No. 3:19-cv-01499 (MPS)

## RULING ON § 2255 MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE

Shaquille Richardson, *pro se*, seeks to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 on the grounds that: (1) his conviction for Hobbs Act robbery under 18 U.S.C. § 1951 does not qualify as a "crime of violence" under 18 U.S.C. § 924(c)(3) and, as a result, his conviction and sentence under 18 U.S.C. § 924(c)(1)(A) must be vacated; and (2) his trial attorney rendered ineffective assistance of counsel by failing to consult Richardson about filing an appeal and, as a result, Richardson is entitled to the restoration of his appellate rights.  ECF No. 1.  For the reasons set forth below, his motion is DENIED.

## I.    BACKGROUND

The charges in this case arose out of a shooting incident in New Haven, Connecticut.  On June 30, 2016 at approximately 1:41 a.m., New Haven Police Department officers were dispatched to 308 Ferry Street upon the report of a person shot.  Upon arriving at the scene, the officers found Jose Vasquez, who had been shot in the left elbow, and Noel Figueroa, who was bleeding from the face from where he had been punched and pistol-whipped.  *United States v. Richardson*, 3:17-cr-130-MPS, Presentence Report ("PSR"), ECF No. 100 ¶ 11.  Vasquez and Figueroa provided a general description to the police officers of two black males, later identified

as Shaquille Richardson and Thomas Johnson, who, they stated, had robbed them with a silver or "light grey" handgun after leaving a nearby convenience store. Figueroa said that he was struck in the face with that firearm by a black male who fit Richardson's description, and his injuries were severe enough to require twelve stiches in his nose and follow-up surgery. *Id.* ¶¶ 11-14.

On June 13, 2017, a grand jury returned an indictment against Richardson, charging Hobbs Act robbery and aiding and abetting a Hobbs Act robbery in violation of 18 U.S.C. § 1951(a) and § 2 (Count One) and carrying, using, brandishing, and discharging a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A) and § 2 (Count Two). *See* ECF No. 5-1 at 2-3. On January 31, 2018, Richardson pled guilty to attempted Hobbs Act robbery in violation of 18 U.S.C. § 1951(a) and to carrying a firearm during and in relation to a crime of violence (here, the attempted Hobbs Act robbery) in violation of 18 U.S.C. § 924(c)(1)(A). *See id.* at 7-8.[1] In the plea agreement, Richardson agreed to waive his right to appeal or collaterally attack: (1) his conviction; and (2) his sentence, under certain circumstances. The waiver in the written plea agreement reads, as relevant here, as follows:

<u>Waiver of Right to Appeal or Collaterally Attack Conviction and Sentence</u>

The defendant acknowledges that under certain circumstances he is entitled to challenge his conviction and sentence. The defendant agrees not to appeal or collaterally attack his conviction in any proceeding, including but not limited to a motion under 28 U.S.C. § 2255 and/or § 2241. Nor will he pursue such an appeal or collateral attack to challenge the sentence imposed by the Court if that sentence does not exceed 123 months of imprisonment, a three-year term of supervised release, a $200 special assessment, and a fine of $250,000 even if the Court imposes such a sentence based on an analysis different

---

[1] During the plea colloquy, Richardson denied taking anything from Vasquez or Figueroa and, as a result, the colloquy made clear that there was a factual basis only for an attempted robbery. *See* ECF No. 5-1 at 61-65, 68-70. There is no separate offense of attempt to commit Hobbs Act robbery; the statute defining Hobbs Act robbery includes attempts within its scope. 18 U.S.C. § 1951(a) ("Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion *or attempts* or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both." (emphasis added)). Nonetheless, I will refer to the crime in Count One to which Richardson pled guilty as "attempted Hobbs Act robbery" for ease of reference. Richardson did not plead guilty to aiding and abetting Hobbs Act robbery. *See id.* at 7-8, 65.

from that specified above. . . .  The defendant acknowledges that he is knowingly and intelligently waiving these rights.  Furthermore, the parties agree that any challenge to the defendant's sentence that is not foreclosed by this provision will be limited to that portion of the sentence that is inconsistent with (or not addressed by) this waiver.  Nothing in the foregoing waiver of appellate and collateral review rights shall preclude the defendant from raising a claim of ineffective assistance of counsel in an appropriate forum.

ECF No. 5-1 at 12.  On November 20, 2018, I sentenced Richardson to a total effective sentence of 117 months of imprisonment, five years of supervised release, and a $200 special assessment.  *See* ECF No. 5-1 at 20-21.  Richardson did not appeal his sentence or conviction.  *See* ECF No. 1 at 8; *see also* ECF No. 5 at 15.

On September 24, 2019, Richardson filed this Section 2255 motion.  ECF No. 1.  The Government filed its memorandum in opposition on November 12, 2019, ECF No. 5, and Richardson filed his reply on March 30, 2020, ECF No. 6.

## II.   LEGAL STANDARDS

### A.   Section 2255 Motion

Section 2255 permits collateral challenges to federal convictions.  28 U.S.C. § 2255(a) ("A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence.").  In deciding a Section 2255 motion, the court must hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  *Id.* § 2255(b).  A person who files a Section 2255 motion is therefore not automatically entitled to a hearing, and no hearing is required "where the allegations are vague, conclusory, or palpably incredible.  To warrant a hearing, the motion must set forth specific facts supported by competent evidence, raising detailed and controverted issues that, if proved at a hearing, would entitle [the moving party] to relief."  *Gonzalez v. United*

*States*, 722 F.3d 118, 130 (2d Cir. 2013) (internal quotation marks and citations omitted); *see also Pham v. United States*, 317 F.3d 178, 184 (2d Cir. 2003) ("It is within the district court's discretion to determine whether a hearing is warranted [for a Section 2255 motion]."). In the context of a Section 2255 motion asserting an ineffective assistance of counsel claim, as Richardson's does, the Second Circuit has stated: "To warrant a hearing on an ineffective assistance of counsel claim, the [moving party] need establish only that he has a plausible claim of ineffective assistance of counsel, not that he will necessarily succeed on the claim." *Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir. 2009) (internal quotation marks omitted). To succeed on a Section 2255 motion, the moving party must show that he is entitled to relief by a preponderance of the evidence. *See Triana v. United States*, 205 F.3d 36, 40 (2d Cir. 2000).

Further, in deciding a Section 2255 motion, the court "may properly rely on his or her knowledge of the record and may permissibly forgo a full hearing and instead request letters, documentary evidence, and affidavits to aid in its resolution of the claim." *Id.* at 215; *see also Pham*, 317 F.3d at 184 (noting that Second Circuit precedent "permits a 'middle road' of deciding disputed facts on the basis of written submissions"); *United States v. Seiser*, 112 F.3d 507 (2d Cir. 1996) (unpub.) ("A district judge considering a section 2255 motion can rely on her personal familiarity with the case and dismiss the habeas claim without a hearing if she finds that the [motion] lack[s] any truly meritorious allegation and there is overwhelming evidence of [moving party's] guilt." (internal quotation marks omitted) (brackets in original)).

### B.  Procedural Default

"Because collateral challenges are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack." *Yick Man Mui v.*

*United States*, 614 F.3d 50, 53 (2d Cir. 2010) (internal quotation marks omitted).  One such rule is the procedural default rule, which "prevents claims that could have been brought on direct appeal from being raised on collateral review absent cause and prejudice."  *Id.* at 54; *see also Gupta v. United States*, 913 F.3d 81, 84 (2d Cir. 2019) ("[A] collateral challenge may not do service for an appeal.  Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either cause and actual prejudice or that he is actually innocent." (internal citations and quotation marks omitted)).  "In order to demonstrate cause, a defendant must show some objective factor external to the defense such that the claim was so novel that its legal basis [was] not reasonably available to counsel."  *Id.* (internal quotations marks and citations omitted).  "[T]he mere fact that counsel failed to recognize the factual or legal basis for a claim, *or failed to raise the claim despite recognizing it*, does not constitute cause for a procedural default."  *Id.* at 85 (emphasis in original).  A successful claim of ineffective assistance of counsel can satisfy the "cause" standard.  *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).

### C.    Ineffective Assistance of Counsel

To succeed on an ineffective assistance of counsel claim, the moving party must demonstrate that (1) "counsel's performance was deficient" and (2) "the deficient performance prejudiced the defense."  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  The performance prong of the two-part *Strickland* test requires a showing that "counsel's representation fell below an objective standard of reasonableness," in light of "prevailing professional norms."  *Strickland*, 466 U.S. at 688.  To satisfy the prejudice prong, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine

confidence in the outcome." *Id.* at 694. "In applying this standard, a reviewing court must make every effort . . . to eliminate the distorting effects of hindsight and indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . [and] might be considered sound trial strategy." *United States v. Cohen*, 427 F.3d 164, 167 (2d Cir. 2005) (internal quotation marks omitted) (brackets in original).

## III.    DISCUSSION

As a threshold matter, Richardson argues that his Section 2255 motion is not barred by the waiver of appellate and collateral review rights in his plea agreement because: (1) he was sentenced to a 5-year term of supervised release, which exceeds the maximum 3-year term of supervised release set forth in the plea agreement provision waiving his right to appeal or bring a collateral attack with respect to his sentence; and (2) the written judgment, which stated that Richardson was sentenced to concurrent 117-month terms of imprisonment on both counts, is illegal because a conviction under section 924(c)(1)(A) carries a mandatory *consecutive* term of imprisonment. ECF No. 1 at 4-5; ECF No. 6 at 3. Richardson then raises two primary arguments challenging his sentence and conviction. First, he argues that his conviction for attempted Hobbs Act robbery under 18 U.S.C. § 1951(a) does not qualify as a "crime of violence" under 18 U.S.C. § 924(c)(3) and, therefore, his conviction and sentence under 18 U.S.C. § 924(c)(1)(A) must be vacated. That is so, Richardson argues, because attempted Hobbs Act robbery is not categorically a crime of violence as required by the elements-only categorical analysis set forth in *Davis v. United States*, 139 S. Ct. 2319 (2019), which was decided after Richardson was sentenced and after his appeal rights expired.[2] *See* ECF No. 6 at 6-7. Second,

---

[2] Richardson first argues that he was convicted under the aiding and abetting statute, 18 U.S.C. § 2, and that aiding and abetting Hobbs Act robbery is not categorically a crime of violence under *Davis* and section 924(c)(3). *See* ECF No. 1 at 3-6. However, as discussed above, Richardson pled guilty to, and was convicted of, attempted Hobbs Act robbery, not aiding and abetting Hobbs Act robbery. As a result, I need not, and do not, address whether aiding and

Richardson argues that his trial attorney rendered ineffective of counsel by failing to consult with Richardson about filing an appeal, thus meriting the restoration of Richardson's appellate rights. ECF No. 1 at 8-9; ECF No. 6 at 4-6.  Because the sentence imposed in the written judgement does not conform to the oral sentence I imposed in the courtroom with Richardson present, I first amend the written judgment to conform to the oral sentence.  Having done so, and for the reasons discussed below, I find that Richardson's claims lack merit and therefore I must deny his motion in its entirety.

###    A.    The Sentence in the Written Judgment Contains a Clerical Error and Does Not Conform to the Oral Sentence.

As an initial matter, as both Richardson and the Government point out, the sentence in the written judgment does not conform to the oral sentence.  On November 28, 2018, I issued a written judgment that indicated that Richardson had pled guilty to Hobbs Act robbery in violation of 18 U.S.C. § 1951(a) (Count One) and carrying a firearm during and in relation to a crime of violence in violation of 18 U.S.C. 924(c)(1)(A) (Count Two).  ECF No. 5-1 at 20-21. The written judgment then provided, in relevant part, as follows: (1) "The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total of 117 months on each count of conviction, to run concurrently."; and (2) "[T]he defendant shall be on supervised release for a total term of 5 years on each count of conviction, to run concurrently." ECF No. 5-1 at 20 (emphasis added).  But these terms of the written judgment do not conform with the oral sentence I imposed eight days earlier on November 20, 2018.  The oral sentence, as I discuss in greater detail below, provided that Richardson was sentenced to: (1) a total of 117 months of imprisonment – 57 months for Count One (the Hobbs Act robbery conviction) and 60 months for Count Two (the Section 924(c)(1)(A) conviction), to run consecutively to Count One;

_____

abetting Hobbs Act robbery is categorically a crime of violence under section 924(c)(3).

and (2) a 5-year term of supervised release (3 years for Count One, and 5 years for Count Two, to run concurrently to Count One). Because the oral sentence controls where there is a conflict with the written judgment, I must amend the written judgment to conform to the oral sentence.

Federal Rule of Criminal Procedure 36 provides that: "After giving any notice it considers appropriate, the court may at *any time* correct a clerical error in a judgment, order, or other part of the record, or correct an error in the record arising from oversight or omission." Fed. R. Crim. P. 36 (emphasis added).[3]  "It is clearly established in [the Second] Circuit that [i]t is the oral sentence which constitutes the judgment of the court, and which is authority for the execution of the court's sentence. The written commitment order is mere evidence of such authority." *United States v. Werber*, 51 F.3d 342, 347 (2d Cir. 1995) (internal quotation marks omitted). "Rule 36 authorizes a district judge, at any time, to amend the written judgment so that it conforms with the oral sentence pronounced by the court." *Id.*; *see also United States v. A-Abras Inc.*, 185 F.3d 26, 29 (2d Cir. 1999) ("Where an unambiguous oral sentence conflicts with the written judgment, the constitutional right of a defendant to be present at sentencing dictates that the oral pronouncement of sentence must control."). To be sure, "Rule 36 authorizes a court to correct only clerical errors in the transcription of judgments, not to effectuate its unexpressed intentions at the time of sentencing[,]" *Werber*, 51 F.3d at 343 (footnote omitted), and, as Richardson points out, *see* ECF No. 6 at 5, "[w]hat Rule 36 does not permit . . . is amendment of the oral sentence itself[,]" *Werber*, 51 F.3d at 347.

Here, I find that the oral sentence is unambiguous, and I therefore must amend the sentence imposed in the written judgment to conform with the oral sentence under Rule 36 and

---

[3] Because the Government's brief suggested that the Court amend its judgment under Rule 36, and because Richardson had an opportunity to, and did, respond to that suggestion, I find that no further notice of the correction to the judgment is required.

Second Circuit precedent. That is so because, as the following excerpts from the transcript of the sentencing on November 20, 2018 make plain, the oral sentence I imposed consisted of: (1) a 57-month term of imprisonment for Count One and a 60-month term of imprisonment on Count Two, to run consecutively to Count One; and (2) a 3-year term of supervised release for Count One and a 5-year term of supervised release for Count Two, to run concurrently to Count One.

At the sentencing, I explained to Richardson that he faced a maximum sentence of 20 years' imprisonment and three years' supervised release as to Count One (Hobbs Act robbery) and life imprisonment and five years' supervised release as to Count Two (carrying a firearm in relation to a crime of violence). I also explained that Count Two carried a mandatory minimum term of imprisonment of five years, and that the imprisonment term imposed on Count Two had to run "consecutively, which means in addition to the term of imprisonment imposed for Hobbs Act robbery." ECF No. 5-1 at 84. I added that "[t]erms of supervised release run concurrently, which means at the same time." *Id.* I then confirmed that neither party objected to the U.S. Probation Office's calculation of the Sentencing Guidelines range in the pre-sentence report. *See* ECF No. 5-1 at 86. According to that calculation, the Guidelines range was, as to imprisonment, 111 to 123 months, including 51 to 63 months as to Count One, plus 60 months to be imposed consecutively as to Count Two; and, as to supervised release, 1 to 3 years as to Count One and 2 to 5 years as to Count Two. 17-cr-130, ECF No. 100 at 18. I noted that I had reached a slightly different conclusion and determined a slightly lower Guidelines range as to imprisonment than provided in the pre-sentence report and agreed to by the parties in the plea agreement.[4]

---

[4] The parties agreed to a Guidelines Stipulation in the plea agreement, which provides as follows:

Guideline Stipulation

. . .

The defendant's base offense level under U.S.S.G. § 2B3.1 for Count One is 20. That level is increased by four

Specifically, I stated that "Well, I actually do have a -- something that I'm going to do differently, which is that . . . I am not going to impose the one level enhancement for the taking of a controlled substance as the object of the offense." ECF No. 5-1 at 86. Then, I described my Guidelines calculation and confirmed that neither party objected:

> [THE COURT]: The calculation -- the Guidelines calculation of offense level for the Hobbs Act Robbery, the offense level is 21. Mr. Richardson falls into Criminal History Category III. An offense level of 21 and a Criminal History Category of III would make the Guidelines range 46 to 57 months on the Hobbs Act Robbery count. However, because of the requirement that the Court add a minimum of 60 months when it imposes sentence on the gun count, the Guidelines range becomes 106 to 117 months of imprisonment, a total of two to five years of supervised release. The defendant's not eligible for probation. The fine range is 15,000 to $150,000. The special assessment is $200. Does either counsel have any objection to my calculation of the Guidelines range?
>
> MR. SULLIVAN: No, Your Honor.

---

levels pursuant to U.S.S.G. § 2B3.1(b)(3)(B) because the victims sustained serious bodily injury as a result of this offense. One additional level is added pursuant to U.S.S.G. § 2B3.1(b)(6) because the taking of a controlled substance was the object of the offense. This results in a total offense level of 25. 3 levels are subtracted under U.S.S.G. § 3E1.1 for acceptance of responsibility, as noted above, resulting in a total offense level of 22.

Based on an initial assessment, the parties agree that the defendant falls within Criminal History Category III. The parties reserve the right to recalculate the defendant's Criminal History Category and corresponding sentencing ranges if this initial assessment proves inaccurate.

A total offense level of 22, assuming a Criminal History Category III, would result in a range of 51 to 63 months of imprisonment (sentencing table) and a fine range of $15,000 to $250,000, U.S.S.G. § 5E1.2(c)(3). The defendant is also subject to a supervised release term of one year to three years. U.S.S.G. § 5D1.2.

The guideline incarceration range increases to 111 to 123 months' incarceration based on the defendant's conviction of Count Two of the Indictment, which charges him with carrying a firearm during and in relation to the offense charged in Count One and carries a mandatory minimum consecutive incarceration term of 60 months.

The parties agree that neither a downward nor an upward departure from the sentencing range set forth above is warranted and that a sentence within the agreed range is reasonable. Accordingly, neither party will seek a departure or seek any adjustment not set forth herein. Moreover, the defendant will not seek a non-Guidelines sentence.

The defendant understands that the Court is not bound by this agreement on the Guideline ranges specified above. The defendant further understands that he will not be permitted to withdraw the guilty plea if the Court imposes a sentence outside any of the ranges set forth in this agreement.

In the event the United States Probation Office or the Court contemplates any sentencing calculations different from those stipulated by the parties, the parties reserve the right to respond to any inquiries and make appropriate legal arguments regarding the proposed alternate calculations. Moreover, the parties reserve the right to defend any sentencing determination, even if it differs from that stipulated by the parties, in any post-sentencing proceeding.

ECF No. 5-1 at 11-12.

MS. COURTNEY KAOUTZANIS:  No, Your Honor.

ECF No. 5-1 at 88.  Then, after hearing statements from the parties, I turned to the imposition of

sentence, discussing the section 3553(a) factors, repeating that "the Guidelines range in this case

is 106 to 117 months of imprisonment," and stating that "I think that a sentence at the top of the

range is needed here. . . .  [G]oing below the top of the Guidelines range would not fulfill the

purpose that I'm required to fulfill which is to adequately reflect the seriousness of the offense."

ECF No. 5-1 at 107, 112.  I also stated that, because of the need to protect the public and because

Richardson had lacked a strong support network in his life, "I think a somewhat longer than

usual period of supervised release is necessary here where the court imposes conditions and

structure."  *Id*. at 111.  I then announced the sentence, as follows: "Please stand.  I sentence you

to 117 months of imprisonment.  5 years of supervised release. . . ."  *Id*. at 113.  After imposing

the conditions of supervised release, I asked counsel:

> [THE COURT]: Does either counsel know of any reason that the sentence I have
> described cannot legally be imposed as the Court's sentence?
>
> MS. COURTNEY KAOUTZANIS:  No, Your Honor.
>
> MR. SULLIVAN:  No, Your Honor.
>
> THE COURT:  The sentence I've described is imposed as the sentence in your case.

*Id*. at 115.

It is clear from the transcript of the sentencing that the incarceration component of the

oral sentence – "117 months of imprisonment" – consisted of 57 months' imprisonment on

Count One (the top of the 46 to 57 month guideline range I calculated) and 60 months on Count

Two, to run consecutively to the term imposed on Count One.  It is equally clear that my

announcement of "5 years of supervised release" meant a concurrent five-year period on both

counts, i.e., the statutory maximum on Count One (three years) to run concurrently with the

statutory maximum on Count Two (five years).  That is the top-of-the-guidelines sentence and the "longer than usual period of supervised release" I described to Richardson and imposed on him orally in the courtroom.  Nowhere does the oral sentence mention anything about concurrent terms of imprisonment, and nowhere does the oral sentence say anything about imposing 117 months of imprisonment for *each* count.

As a result, because the oral sentence is unambiguous, and because it conflicts with the sentence in the written judgment, I must amend the written judgment to conform to the oral sentence.  Thus, I will issue an order in the underlying criminal case (*United States v. Richardson*, 17-cr-130, ECF No.103) that the written judgment be amended under Federal Rule of Criminal Procedure 36 as follows: (1) Under the heading "**IMPRISONMENT**" on page 1 of ECF No. 103, the term of imprisonment – currently written as: "The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total of 117 months on each count of conviction, to run concurrently." – shall be amended to: "The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total of 117 months (57 months for Count One and 60 months for Count Two, to run consecutively to Count One)."; and (2) Under the heading "**SUPERVISED RELEASE**" on page 1 of ECF No. 103, the term of supervised release – currently written as: "Upon release from imprisonment, the defendant shall be on supervised release for a total term of 5 years on each count of conviction, to run concurrently." – shall be amended to: "Upon release from imprisonment, the defendant shall be on supervised release for a total term of 5 years (3 years for Count One, and 5 years for Count Two, to run concurrently)."  A separate docket entry will be entered in *United States v. Richardson*, 3:17-cr-130-MPS, to effect this amendment.

**B.      Richardson's Challenge to his Conviction and Term of Imprisonment is Barred by His Waiver of Appellate and Collateral Review Rights in the Plea Agreement.**

As noted above, Richardson asserts that his Section 2255 motion is not barred by his waiver of appellate and collateral review rights in the plea agreement.  Specifically, Richardson argues that the waiver in his plea agreement "is vitiated by imposition of the concurrent 5 year terms of supervised release, which do not comport with the plea agreement and thus operate to void the waiver by its own terms." ECF No. 1 at 4.  In addition, Richardson argues that his waiver of appellate and collateral review rights is vitiated on independent grounds by the concurrent 117-month sentences of imprisonment (from the November 28, 2018 written judgment) because that sentence violates the requirement of consecutive sentences set forth in section 924(c)(1)(A).  *Id.*; ECF No. 6 at 3.  In response, the Government argues that (1) Richardson validly waived his right to collaterally attack his conviction and sentence of imprisonment and can only challenge his term of supervised release, ECF No. 5 at 6-9; and (2) the written judgment contained a typographical error as to the concurrent sentence of imprisonment, *id.* at 9-10.  I agree with the Government and, having resolved the discrepancy between the oral and written judgment above, proceed to discuss the scope and validity of Richardson's waiver next.

"A defendant's knowing and voluntary waiver of the right to appeal or collaterally attack his conviction and/or sentence is enforceable." *Sanford v. United States*, 841 F.3d 578, 580 (2d Cir. 2016).  "Knowing and voluntary appellate waivers included in plea agreements must be enforced because, if they are not, the covenant not to appeal becomes meaningless and would cease to have value as a bargaining chip in the hands of defendants." *United States v. Granik*, 386 F.3d 404, 412 (2d Cir. 2004) (internal quotation marks omitted).  Courts in the Second

Circuit "construe plea agreements according to contract law principles, but because plea agreements are unique contracts, we temper the application of ordinary contract principles with special due process concerns for fairness and the adequacy of procedural safeguards." *United States v. Riggi*, 649 F.3d 143, 147 (2d Cir. 2011) (internal citations and quotation marks omitted). "While plea agreements are to be applied narrowly and construed strictly against the government, exceptions to the presumption of the enforceability of a waiver . . . occupy a very circumscribed area of [Second Circuit] jurisprudence." *Sanford*, 841 F.3d at 580 (internal quotation marks and citations omitted). A defendant may have a valid claim that the waiver of appellate rights is unenforceable where: (1) the waiver "was not made knowingly, voluntarily, and competently", *id.*; (2) "the government breached the plea agreement", *id.*; (3) an ineffective assistance of counsel claim relates directly to the process by which the waiver was procured, *Frederick v. Warden, Lewisburg Corr. Facility*, 308 F.3d 192, 195 (2d Cir. 2002); or (4) there is a "violation of a fundamental right", "[f]or example . . . where the sentence imposed was based on unconstitutional factors – such as race, naturalized status, or the ability to pay restitution . . . [or] where a sentencing court failed to enunciate any rationale for the defendant's sentence," *Riggi*, 649 F.3d at 147. A defendant's "inability to foresee that subsequently decided cases would create new appeal issues does not supply a basis for failing to enforce an appeal waiver. On the contrary, the possibility of a favorable change in the law after a plea is simply one of the risks that accompanies pleas and plea agreements." *United States v. Morgan*, 406 F.3d 135, 137 (2d Cir. 2005) (footnotes omitted). To determine whether a waiver is enforceable, "courts examine the underlying record and may rely on a defendant's sworn statements during the plea allocution, which . . . 'carr[y] such a strong presumption of accuracy that a district court does not, absent a substantial reason to find otherwise, abuse its discretion in discrediting later self-

serving and contradictory testimony.'" *Korn v. United States*, No. 15-CR-81S, 2019 WL 2088534, at *4 (W.D.N.Y. May 13, 2019) (quoting *United States v. Juncal*, 245 F.3d 166, 171 (2d Cir. 2001)).

Here, Richardson does not argue that his waiver was not made knowingly, voluntarily, or competently or that a violation of a fundamental right warrants voiding the waiver – nor could he, as I discuss in greater detail below.  He also does not argue that the Government breached the plea agreement, and his ineffective assistance of counsel claim – which I discuss below – does not relate to the process by which the waiver was procured.  Rather, his primary argument appears to be that the plain language of the waiver indicates that he retains his right to appeal or collaterally attack his conviction and term of imprisonment as a whole if *any* component of the sentence imposed exceeds the limits he agreed to:

> Richardson forewent challenging his conviction and sentence only if the "sentence does not exceed 123 months of imprisonment [and] a three year term of supervised release[.]"  The Court imposed a 5 year term of supervised release.  Thus, Richardson is released from the waiver and free to challenge his sentence and conviction.

ECF No. 6 at 3 (internal citations omitted).  But in so arguing, Richardson overlooks a critical sentence in his waiver, which states, in relevant part, as follows:

> The defendant agrees not to appeal or collaterally attack his conviction in any proceeding, including but not limited to a motion under 28 U.S.C. § 2255 and/or § 2241.  Nor will he pursue such an appeal or collateral attack to challenge the sentence imposed by the Court if that sentence does not exceed 123 months of imprisonment, a three-year term of supervised release, a $200 special assessment, and a fine of $250,000 even if the Court imposes such a sentence based on an analysis different from that specified above. . . . The defendant acknowledges that he is knowingly and intelligently waiving these rights. *Furthermore, the parties agree that any challenge to the defendant's sentence that is not foreclosed by this provision will be limited to that portion of the sentence that is inconsistent with (or not addressed by) this waiver.*  Nothing in the foregoing waiver of appellate and collateral review rights shall preclude the defendant from raising a claim of ineffective assistance of counsel in an appropriate forum.

ECF No. 5-1 at 12 (emphasis added).  The plain meaning of the italicized sentence is that,

contrary to Richardson's assertion, his waiver applies to each component of the sentence independently, i.e., he may appeal or collaterally attack only the particular components of the sentence that exceed (or are not addressed by) the amounts stated in the waiver provision. Richardson's only attempt to address the sentence in italics is to assert in a conclusory manner that it is ambiguous, but he does not discuss why it is ambiguous or what other possible meaning that sentence could have. *See* ECF No. 6 at 3. When Richardson's waiver of appellate and collateral review rights is read as a whole, as it must be under general contract principles, there is no ambiguity in the waiver's scope or meaning. *See* Restatement (Second) of Contracts § 202 (1981) ("A writing is interpreted as a whole, and all writings that are part of the same transaction are interpreted together."); *see also id.* cmt. d ("Meaning is inevitably dependent on context. . . . Where the whole [of the writing] can be read to give significance to each part, that reading is preferred . . . .").

Richardson's waiver is simple. He gave up his right to appeal or collaterally attack: (1) his conviction under any circumstance, with the exception of an ineffective assistance of counsel claim; and (2) his sentence, so long as every component of that sentence fell within the scope of the waiver (again, excepting ineffective assistance of counsel claims). He did not waive his right to appeal or collaterally attack individual components of his sentence that exceed the limits set forth in, or that were not addressed by, the waiver in his plea agreement. Here, the only component of Richardson's sentence that falls outside the scope of his waiver is the term of supervised release; he has waived his right to appeal or collaterally attack his conviction and every component of the sentence imposed – including his term of imprisonment (because 117 months falls below the 123-month maximum in his waiver) – except for the term of supervised

release (because the 5-year term imposed exceeds the 3-year maximum in his waiver).[5]  *See*

*United States v. Burden*, 860 F.3d 45, 54 (2d Cir. 2017) (per curiam) (affirming the Second

Circuit's principle of "narrowly construing appeal waivers" such that "[w]hen an appeal waiver

is silent regarding a specific aspect of a sentence, [the Second Circuit] generally finds that the

appeal waiver does not foreclose challenges to that aspect of the sentence[,]" but that appeal

waivers are presumptively enforceable as to the aspects of a sentence that are specifically

addressed by the waiver); *see also id.* at 54-55 (construing waiver of appellate rights narrowly to

bar challenges to the term of incarceration but not to the term of supervised release because the

waiver could be construed to be specific only as to incarceration); *United States v. Nelson*, 419 F.

App'x 65, 66 (2d Cir. 2011) (explaining that defendant's appeal waiver, which was specific only

as to the period of incarceration, did not bar an appeal from other aspects of the sentence –

including the term of supervised release and special assessment – but because "the instant appeal

challenges only the 110-month term of imprisonment [which falls below the 137-month term

specified in the waiver], [he] cannot proceed under the terms of the waiver."); *United States v.

Cunningham*, 292 F.3d 115, 117 (2d Cir. 2002) (permitting a challenge to the supervised release

term where the appeal waiver was specific only as to the term of incarceration and was silent as

to supervised release).  As a result, his waiver – read narrowly and construed strictly against the

Government, as it must be – is presumptively enforceable and means that Richardson's challenge

---

[5] I explained this point to Richardson at the conclusion of his sentencing: "[THE COURT:] With regard to your appeal rights, Mr. Richardson.  In your Plea Agreement you agreed to waive or give up your right to appeal the sentence as long as it did not exceed 123 months, three years of supervised release, and I think forfeiture and the assessment.  But in any event, with regard to the incarceration component, my sentence is below the appeal waiver.  And so it would appear that you've waived your right to appeal the prison term.  On the other hand, the period of supervised release is greater than the three years that you agreed to waive.  So if you wish, it does not appear you've given up your right to appeal the period of supervised release.  In any event, if you wish to appeal, and regardless of what you wish to appeal, you must file a written Notice of Appeal within 14 days of the entry of judgment.  Do you understand the time limit?  THE DEFENDANT: Yes, sir."  ECF No. 5-1 at 115-16.  As noted, Richardson did not file an appeal.

to his conviction and term of imprisonment is barred unless he can demonstrate that (1) his waiver was not made knowingly, voluntarily, or competently, or (2) a violation of a fundamental right warrants voiding the waiver.[6]  For the reasons discussed below, I find that Richardson made his waiver knowingly, voluntarily, and competently, and that he has not met his burden to demonstrate that a violation of any fundamental right warrants voiding the waiver.  Therefore, to the extent Richardson's Section 2255 motion challenges his conviction and term of imprisonment, it is barred by the waiver of his appellate and collateral review rights in his plea agreement.

> 1. *Richardson Waived his Appellate and Collateral Review Rights Knowingly, Voluntarily, and Competently.*

A review of the record makes clear that Richardson waived his appellate and collateral review rights knowingly, voluntarily, and competently.  Under Federal Rule of Criminal Procedure 11, "[b]efore the court accepts a plea of guilty . . . , the defendant may be placed under oath, and the court must address the defendant personally in open court."  Fed. R. Civ. P. 11(b)(1).  During this colloquy, "the court must inform the defendant of, and determine that the defendant understands [a number of factors including] . . . the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence[.]"  *Id.* 11(b)(1)(N).  This requirement was met during Richardson's Rule 11 colloquy, as the following excerpts from January 31, 2018 guilty plea hearing transcript demonstrate:

> THE COURT: So, Mr. Sullivan, have you had any trouble communicating with your client?
>
> MR. SULLIVAN:  None whatsoever, your Honor.
>
> THE COURT:  Have you had enough time and information to allow for meaningful discussion with him about his case?

---

[6] Even construed liberally, Richardson's motion does not raise any other challenges to his waiver.

18

MR. SULLIVAN:  Yes.

. . .

THE COURT:  And do you believe your client understands the rights he will be giving up by pleading guilty today?

MR. SULLIVAN:  Yes, Your Honor.  We covered them extensively multiple times, including this morning.  I'm confident that he understands those rights.

THE COURT:  Do you have any doubt as to his competence to plead guilty today?

MR. SULLIVAN:  None whatsoever.

THE COURT:  From your perspective, Mr. Richardson, have you had enough opportunity and enough information to discuss the case meaningfully with your lawyer?

THE DEFENDANT:  Yes, sir.

ECF No. 5-1 at 30-31.  After discussing a number of other rights Richardson would give up by entering a guilty plea, the colloquy continued:

THE COURT:  Very well.  Mr. Richardson, have you read the Plea Agreement?

THE DEFENDANT:  Yes, sir.

THE COURT:  And did you have a chance to -- did you discuss it with your lawyer?

THE DEFENDANT:  Yes, sir.

THE COURT:  Do you believe you understand the Plea Agreement?

THE DEFENDANT:  Yes, sir.

THE COURT:  Mr. Sullivan, do you believe your client understands the Plea Agreement?

MR. SULLIVAN:  I'm confident he does, Your Honor.  I brought it to him in prison, I've shown it to him, went over it with him, left it with him and, again, this morning went over it with him paragraph by paragraph.  But I'm comfortable he read and understood it even beyond my explanations.

*Id.* at 37-38.  Richardson then signed the plea agreement.  *Id.* at 38.  I also confirmed that Richardson was entering into the plea agreement voluntarily.  *Id.* at 46-47.

During the colloquy, I specifically addressed Richardson's waiver of appellate and

collateral review rights:

> [THE COURT:] Mr. Richardson, let me just draw your attention to page six of the Plea
> Agreement for a moment. The bottom half of the agreement, there is a paragraph that has
> a subheading Waiver of Right to Appeal or Collaterally Attack Conviction and Sentence.
> Do you see that paragraph, sir[?]
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: What that paragraph is saying is that you are giving up in that paragraph
> two sets of rights. The first set of rights that you're giving up is the right to attack your
> conviction, your guilt. In other words, what it's saying is that once you plead guilty
> you're not going to go to a Court of Appeals or another court using a habeas petition or
> some other type of lawsuit and later say, you know what, I wasn't guilty. So that's the
> first thing you're giving up in that paragraph.
>
> The second thing you're giving up is the right to appeal your sentence under certain
> circumstances. The second type of waiver is a limited waiver. What you're saying there
> is that you won't challenge your sentence in any type of proceeding, appeal or habeas
> proceeding, or anything like that, as long as when we get to sentencing the sentence that I
> impose is equal to or less than 123 months of imprisonment, three years of supervised
> release, a $200 special assessment, and a $250,000 fine. As long as the sentence is equal
> to or less than those amounts then, in effect, the case is over. You're not going to be able
> to go challenge the sentence anywhere. Do you understand that?
>
> THE DEFENDANT: Yes, sir.

*Id*. at 43-44. Later, after the complete allocution and after Richardson entered a guilty plea as to

Counts One and Two, I found as follows:

> THE COURT: On the basis of the Plea Agreement, the answers to the questions of the
> Court given by the defendant while under oath, on the record, in open court, and in the
> presence of his lawyer, on the basis of the remarks of defense counsel and the remarks of
> the Assistant United States Attorney, I find as follows:
>
> First, that the defendant is fully competent and capable of entering an informed plea.
>
> Second, that he understands the nature of the charges to which he's pled guilty.
>
> Third, that he understands his rights.
>
> Fourth, that he understands the possible consequences of his guilty pleas.

Fifth, that he has chosen to plead guilty because he is, in fact, guilty of the offenses charged.

Sixth, that the pleas of guilty are knowing and voluntary pleas supported by an independent basis in fact containing each of the essential elements of the two offenses.

The defendant's pleas are accepted and he is adjudged guilty of the offenses to which he pled guilty.

*Id.* at 73-74.

Thus, I find that Richardson knowingly, voluntarily, and competently waived his appellate and collateral review rights with respect to the conviction and term of imprisonment because: (1) he signed the plea agreement, immediately under a paragraph in which he certified that he had read and fully understood the agreement, ECF No. 5-1 at 16 ; (2) he stated under oath that he read and understood the plea agreement, including the provision waiving his appellate and collateral review rights; (3) he stated that he had sufficient opportunity to discuss the plea agreement with his attorney; (4) Richardson's counsel stated that he had read and explained the plea agreement to Richardson, and that Richardson had understood its terms; (5) the 117-month term of imprisonment imposed falls within the waiver's scope; (6) he does not argue that he did not make his waiver knowingly, voluntarily, or competently; and (7) I am aware of no "substantial reason" that I may not rely on Richardson's sworn statements made during the plea allocution, *Juncal*, 245 F.3d at 171. *See Garcia-Santos v. U.S.*, 273 F.3d 506, 508 (2d Cir. 2001) (per curiam) ("find[ing] no error in the District Court's determination that [the defendant's] plea agreement was entered into knowingly and voluntarily, and with awareness of his waiver of appeal and collateral attack [even though the magistrate judge who conducted the change of plea hearing did not ask the defendant about, and did not specifically address, the waiver of appeal and collateral attack, but did ask generally whether the defendant understood that "'under some circumstances you or the government may have the right to appeal any sentence that is

imposed"]. . . . [because]: (1) petitioner signed the plea agreement, (2) he stated to the magistrate

judge that he had read and understood the plea agreement, (3) [the defendant] did not attempt to

appeal his sentence, even though he had been told [(incorrectly, because the sentence imposed

triggered the waiver in the plea agreement)] by the [district court] sentencing judge that he had

the right to appeal, (4) he did not claim, in his § 2255 motion, that he had not understood the

waiver contained in his plea agreement, and (5) even in his petition for reconsideration, he did

not assert explicitly or under oath that at the time of his plea he did not understand that he was

giving up his right to appeal and petition under § 2255.").[7]

### 2. *Richardson has not Shown that a Violation of a Fundamental Right Warrants Voiding his Waiver of Appellate and Collateral Review Rights.*

Although Richardson does not expressly argue that a violation of a fundamental right

voids his waiver of appellate and collateral review rights as to his conviction and term of

imprisonment, I construe his *pro se* motion liberally and thus consider – and ultimately reject –

any such argument here. Construing his motion liberally, Richardson argues that: (1) his

conviction and sentence under Section 924(c) are unconstitutional under *Davis*; (2) it is a

---

[7] *See also U.S. v. Cook*, 722 F.3d 477, 482 (2d Cir. 2013) (holding that, under plain error review, the district court "properly addressed the waiver provision [of appellate rights] during the [Rule 11] plea colloquy" where the appeal waiver provision was explained by the prosecutor, not the judge, and the judge "explicitly asked [the defendant] about the appellate waiver, and [the defendant] confirmed that he consented to it"); *U.S. v. Pena*, 297 Fed. App'x 76, 78-79 (2d Cir. 2008) (holding that defendant's waiver of appeal rights in a plea agreement was knowing and voluntary, despite the fact that the plea agreement had not been translated word-for-word into Spanish, where the record clearly indicated that defendant understood the terms of plea agreement and knowingly and voluntarily waived her right to appeal because, during the plea allocution, the court confirmed that: (1) defense counsel stated that he went over all details of the agreement with defendant multiple times prior to the plea proceeding, including on the morning of the proceeding, with the assistance of an interpreter; (2) defendant stated that she had enough time to discuss plea with her attorney; and (3) the defendant expressly confirmed that she understood the waiver); *U.S. v. Braithwaite*, 242 Fed. App'x 765, 767 (2d Cir. 2007) (holding that defendant was barred from challenging his sentence on appeal by his waiver of such rights in his plea agreement because, even in the absence of a transcript from the defendant's plea hearing, the record demonstrated that defendant knowingly and voluntarily waived his appellate rights because: (1) "[the defendant] himself certified by his signature on his plea agreement that he had read and understood the terms of the document, which included the waiver of his appeal rights"; (2) "[defendant's] counsel at the time attested that he had read and explained the plea agreement to [the defendant], and that his client had understood its terms"; and (3) there was an "absence of any evidence or even assertion by [the defendant] to the contrary").

violation of Richardson's right to due process – a fundamental right – to deny him the right to challenge his conviction and sentence under a statute that the Supreme Court has declared to be unconstitutional in a ruling that is of likely retroactive effect, *see Bonilla v. United States*, 2020 WL 489573 *3 (E.D.N.Y. Jan. 29, 2020) ("[I]t seems plain to this Court that taken together, the Supreme Court's holdings in *Davis* and *Welch* necessarily dictate that *Davis* has been made retroactively applicable to criminal cases that became final before *Davis* was announced." (internal quotation marks omitted)); and (3) therefore his waiver of appellate and collateral review rights as to his conviction and term of imprisonment is void. *See* ECF No. 1 at 4. The Government, to the extent it addresses this line of argument, argues that Richardson's *Davis* claim is not the sort of challenge that can circumvent his waiver of appellate and collateral review rights in the plea agreement. I agree with the Government.

As noted above, in the Second Circuit, a violation of a fundamental right sufficient to warrant voiding an appeal waiver occurs, for example, where "the sentence imposed was based on unconstitutional factors—such as race, naturalized status, or the ability to pay restitution"—or where "a sentencing court failed to enunciate any rationale for the defendant's sentence, and thus abdicat[ed] [its] judicial responsibility." *Riggi*, 649 F.3d at 147 (internal quotation marks and citations omitted) (brackets in original); *see also id.* at 147-48 (comparing examples of violations of fundamental rights that warrant voiding an appeal waiver with "other meaningful errors that are insufficient to void an appeal waiver", e.g., "where a sentence was arguably imposed contrary to a statutory requirement"). "The decisive considerations dividing these cases [that do or do not warrant voiding an appeal waiver] appear to be the nature of the right at issue and whether the sentence was reached in a manner that the plea agreement did not anticipate." *Id.* at 148 (internal quotation marks omitted). "As to the nature of the right, a defendant pleading

guilty can waive elemental constitutional and statutory rights.  However, a defendant may be

deemed incapable of waiving a right that has an overriding impact on public interests, as such a

waiver may irreparably discredit[] the federal courts." *Id.* (internal citations and quotation marks

omitted).  "As to unanticipated matters at sentencing, a defendant who waives his right to appeal

does not subject himself to being sentenced entirely at the whim of the district court." *Id.*

(internal quotation marks omitted).

   Neither of the examples of a fundamental right given in *Riggi* describes this case.

Richardson does not argue – and nothing in the record suggests – that any component of the

sentence was imposed based on unconstitutional factors or that the sentencing court abdicated its

judicial responsibility in any way.  At sentencing, I gave a detailed explanation of the sentence

based on the factors in 18 U.S.C. § 3553(a); indeed, my explanation takes up 7 pages of the

sentencing transcript.  ECF No. 5-1 at 106-13.  And as noted, with the exception of the term of

supervised release, each aspect of the sentence imposed on Richardson fell within the scope of

the waiver he bargained for.  Even as to the term of supervised release, Richardson was expressly

put on notice at the change-of-plea proceeding that his sentence could be increased up to the

statutory maximum under certain circumstances and that neither the plea agreement nor the

parties' understanding of the Sentencing Guidelines would bind the court at sentencing. [8]

Further, no public interest was impaired by Richardson's waiver, and recognizing the waiver

---

[8] During the change of plea hearing, I stated: "You should also know that your sentence could be increased up to the statutory maximum for a variety of reasons.  For example, if it is determined that you have, say, a more serious criminal history than the parties currently understand to be the case, or that you committed these crimes while you were on parole or probation, or that you engaged in other crimes related to the conduct that is the subject of Counts One and Two, and if any of those things were brought to my attention I could decide to increase your sentence because of them.  If I did that you would have no right to withdraw your guilty plea."  ECF No. 5-1 at 50; *see also id.* at 51-54 (explaining the Sentencing Guidelines and that the parties' understanding of the guidelines range as memorialized in the plea agreement was not binding on the court; "[THE COURT]: If I do not accept any of the agreements set forth in your Plea Agreement, you will still be bound by your guilty plea.  You will have no right to withdraw that plea.  And I could impose a sentence that's more severe than the one that you might be expecting.").

does not undermine the integrity of the judiciary or the sentencing process. *See Riggi*, 649 F.3d at 148-49 (holding that defendant's waiver of his right to appeal in his plea agreement was enforceable, where the sentencing court applied a later, harsher version of the Sentencing Guidelines as stipulated to in the plea agreement – rather than the version in effect at the time of offenses – even if defendant was ignorant of his existing *ex post facto* rights, because, *inter alia*, the sentence fell within the waiver, defendant made no motion to withdraw his plea, and no violation of a fundamental right warranted voiding the waiver).  Richardson's waiver was the product of a reasonable bargain with the Government: In return for pleading guilty and giving up some of his appeal and collateral attack rights, Richardson avoided the likely prospect of a conviction after a jury trial in which the Government would have introduced compelling DNA evidence, ECF No. 5-1 at 57, 60, and thus also avoided the likely prospect of facing a higher Guidelines range at sentencing.  If, in these circumstances, a waiver were found unenforceable, then "the covenant not to appeal becomes meaningless and would cease to have value as a bargaining chip in the hands of defendants."  *Granik*, 386 F.3d at 412.

That Richardson brings his motion under *Davis* does not alter this outcome.  That is so because, in the Second Circuit, an enforceable waiver of appellate and collateral review rights bars even constitutional arguments that are based on subsequent developments in the law.  *See Sanford v. United States*, 841 F.3d 578, 580 (2d Cir. 2016) (holding that defendant's Section 2255 motion was barred by his collateral attack waiver, "even assuming . . . that [the defendant] was sentenced under a Guidelines provision that is unconstitutional after *Johnson* . . ."); *see also United States v. Morgan*, 406 F.3d 135, 137 (2d Cir. 2005) (A defendant's "inability to foresee that subsequently decided cases would create new appeal issues does not supply a basis for failing to enforce an appeal waiver.  On the contrary, the possibility of a favorable change in the

law after a plea is simply one of the risks that accompanies pleas and plea agreements.") (footnotes omitted); *Rodriguez v. United States*, No. 3:16-CV-1784 (JCH), 2019 WL 5552325, at *5 (D. Conn. Oct. 25, 2019) (finding that defendant's *Davis* claim was barred by his waiver of collateral review rights in his plea agreement). At best, Richardson's argument, as construed here, is a constitutional argument based on subsequent developments in the law, because *Davis* and the Second Circuit's 2019 decision in *United States v. Barrett*, 937 F.3d 126 (2d Cir. 2019) (holding that conspiracy to commit Hobbs Act robbery was not a crime of violence under Section 924(c)) were decided after he was sentenced. That is an insufficient basis to warrant voiding his appeal and collateral review waiver and, as a result, his Section 2255 motion is barred to the extent it challenges his conviction and term of imprisonment. [9] But even if

---

[9] To be sure, some courts in the Second Circuit have reached the opposite conclusion in the context of a *Davis* claim. These courts distinguish a *Davis* challenge from the Second Circuit's reasoning in *Sanford* regarding a *Johnson* claim because a *Davis* claim attacks a defendant's conviction while *Sanford* dealt with an attack on the defendant's sentence under a Sentencing Guidelines provision. *Compare United States v. McCarron*, No. 15CR257 (ADS) (AYS), 2020 WL 2572197, at *4 (E.D.N.Y. May 20, 2020) (finding defendant's appellate waiver not enforceable as to his *Davis* claim challenging his 924(c) conviction based on a Hobbs Act robbery conspiracy predicate because, unlike the *Johnson* claim at issue in *Sanford*, a *Davis* claim attacks the conviction – rather than the sentence – as unconstitutional and thus a *Davis* claim – unlike the claim in *Sanford* – implicates a fundamental right sufficient to warrant voiding an appeal waiver), *with Elliott v. United States*, No. 17-CR-128 (ARR), 2019 WL 6467718, at *4 (E.D.N.Y. Dec. 2, 2019), (finding that defendant's *Davis* claim did not render his waiver unenforceable because "[c]ourts in [the Second] circuit have consistently rejected § 2255 petitions and direct appeals when criminal defendants waived those challenges in their plea agreements, even when the law subsequently changed in those defendants' favor.") (collecting cases), *reconsideration denied*, No. 17-CR-128 (ARR), 2020 WL 127640 (E.D.N.Y. Jan. 10, 2020). First, I agree with the reasoning of those courts that find that a valid appeal/collateral attack waiver applies to *Davis* claims because, like those courts, I see no good reason to find that a conviction that became unconstitutional after judgment due to a change in the law violates a fundamental right when a sentence that became unconstitutional after judgment due to a similar change in the law would not. In both contexts, a defendant is convicted of a crime and receives – and serves – a term of incarceration that was believed to be lawful at the time of sentencing but is subsequently found to violate the Constitution. Whether the defendant is in prison because his conviction was illegal or because his sentence was illegal likely makes little difference to him, or at least not difference enough that the right to be free from the former should be regarded as so fundamental as to be un-waivable while the right to be free from the latter is not. Further, the Second Circuit's holding that an "inability to foresee a change in the law does not supply a basis for failing to enforce an appeal [or collateral attack] waiver," *Sanford*, 841 F.3d at 580, was an unqualified one; it thus should not matter whether the change in the law affects the conviction or the sentence or both. Finally, Richardson was convicted of *attempted* Hobbs Act robbery – not Hobbs Act robbery *conspiracy* – and neither the Supreme Court nor the Second Circuit has spoken on the issue of whether *attempted* Hobbs Act robbery constitutes a crime of violence under Section 924(c) after *Davis*. *See United States v. Tyrell*, No. 18-3029-CR, 2021 WL 21775, at *4 (2d Cir. Jan. 4, 2021) (noting that the Second Circuit has "not yet determined whether attempted Hobbs Act robbery is a categorical crime of violence . . ."). As a result, Richardson has not demonstrated that he stands convicted under a statute declared retroactively unconstitutional and therefore he cannot demonstrate that a violation of a fundamental right warrants voiding his waiver.

Richardson's challenge to his conviction and term of imprisonment under *Davis* were not barred by his waiver, he would still not be entitled to any relief under Section 2255 because he has procedurally defaulted this claim.

### C. Richardson's Challenge to his Conviction and Terms of Imprisonment and Supervised Release under *Davis* is Procedurally Defaulted and his Attorney did not Render Ineffective Assistance of Counsel.

The sole argument as to his failure to appeal his conviction and sentence that Richardson makes expressly is based on his statement – provided in an affidavit filed with his Section 2255 motion – that, "[h]ad [Richardson's trial attorney] performed his Sixth Amendment duty to consult with Richardson about an appeal, he would have instructed [his attorney] to file one." ECF No. 1 at 8; ECF No. 6 at 4. Because I must construe Richardson's *pro se* motion liberally, however, I also construe it to argue that his 5-year term of supervised release, which the waiver does not prevent him from challenging, is illegal because: (1) his conviction under Section 924(c), which authorized a term of supervised release of up to five years, is unconstitutional under *Davis*; and (2) the statutory maximum term of supervised release on his remaining conviction – attempted Hobbs Act robbery – is only three years. As explained above, Richardson must show both "cause" and prejudice for the court to overcome the procedural default inherent in his failure to appeal. [10] The Government does not address whether Richardson can establish "cause" because it argues that Richardson fails to demonstrate any prejudice based on its contention that Richardson pled guilty to substantive Hobbs Act robbery – a crime of violence under established law. [11] Because I find that Richardson cannot demonstrate cause to

---

[10] Richardson's motion says nothing that could be construed as a claim of actual innocence.
[11] The Government does not address whether attempted Hobbs Act robbery is categorically a crime of violence under Section 924(c).

overcome his failure to appeal his conviction and any aspect of his sentence (including the term of supervised release), I do not address the question of prejudice.[12]

As noted above, the "'cause' requirement is met if some objective factor, external to [the moving party's] defense, interfered with his ability to comply with the [applicable] procedural rule. These factors can include a factual or legal basis for a claim that was not available to defendant's counsel; interference by Government officials; or ineffective assistance of counsel." *United States v. McCarron*, No. 15CR257(ADS)(AYS), 2020 WL 2572197, at *4 (E.D.N.Y. May 20, 2020) (internal citations and quotation marks omitted). None of these factors exist here.

As an initial matter, Richardson's waiver of appellate and collateral review rights does not constitute cause. *See Garcia-Santos v. United States*, 273 F.3d 506, 508 (2d Cir. 2001) (adhering to the Second Circuit's "holding that a waiver of appeal provision in a plea agreement [does] not constitute 'cause' for failing to take a direct appeal."). "That remains true even in the case of an appellate waiver later found to be unenforceable." *McCarron*, 2020 WL 2572197, at *4 (holding that defendant's *Davis* challenge in a Section 2255 motion was procedurally barred by his failure to file an appeal, even though the court found the waiver to be unenforceable as to a *Davis* claim). Further, the fact that *Davis* and the Second Circuit's subsequent decision in *Barrett* were decided after Richardson's conviction and sentencing in 2018 also does not constitute cause. The Supreme Court's decision in *Johnson* – decided more than three years before Richardson was sentenced – "provided all of the 'tools to construct' a constitutional vagueness challenge to a conviction under the residual clause prior to *Davis*." *McCarron*, 2020 WL 2572197, at *5. As a result, the vagueness argument was available to Richardson on direct appeal and his failure to file an appeal bars this challenge under the procedural default rule. *See*

---

[12] Richardson's argument that prejudice is presumed in circumstances like his, citing *Roe v. Flores-Ortega*, 528 U.S. 470 (2000) and *Campusano v. United States*, 442 F.3d 770 (2d Cir. 2005), is thus moot for purposes of this ruling.

*United States v. Thorn*, 659 F.3d 227, 233 (2d Cir. 2011) ("The futility test to excuse a default is strict: 'the question is not whether subsequent legal developments have made counsel's task easier, but whether at the time of the default the claim was 'available' at all.'" (quoting *Smith v. Murray*, 477 U.S. 527, 537 (1986)); *see also McCarron*, 2020 WL 2572197, at *5 (reaching the same result) (collecting cases); *accord Frazier v. United States*, No. 17-CR-364-7 (CS), 2021 WL 111638, at *2 (S.D.N.Y. Jan. 12, 2021).

Lastly, Richardson's ineffective assistance of counsel claim does not establish cause to excuse his procedural default or a basis to restore his appellate rights. As noted above, to succeed on an ineffective assistance of counsel claim, a petitioner must demonstrate that (1) "counsel's performance was deficient" and (2) "the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. Richardson's "burden is a heavy one because, at the first step of analysis, [I] must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance viewing the actions in light of the law and circumstances confronting counsel at the time." *Harrington v. United States*, 689 F.3d 124, 129 (2d Cir. 2012) (internal citations and quotation marks omitted). "The determinative question at this step is not whether counsel deviated from best practices or most common custom, but whether his representation amounted to incompetence under prevailing professional norms." *Id.* (internal citations and quotation marks omitted). At the second step, the Supreme Court has held that a defendant in Richardson's position must demonstrate that, "but for counsel's deficient conduct, he would have appealed." *Flores-Ortega*, 528 U.S. at 486.

Richardson's motion fails to carry his heavy burden because I find that his counsel's view that there were no non-frivolous grounds for appeal does not amount to incompetence under

prevailing professional norms.  At the end of Richardson's sentencing hearing, his counsel stated:

> The other thing I usually do for the record, there's sometimes this confusion whether there will or will not be an appeal.  I usually make a record that I am aware at this point of no non-frivolous issues that will warrant an appeal.  So, therefore, I am alerting Mr. Richardson right now that I do not intend to file one, but if he should think that I should file one and notifies me I will and take up with the 2nd Circuit whether it's in good faith.

ECF No. 5-1 at 117-18.  That position falls within the wide range of reasonable professional assistance in light of the law and circumstances confronting counsel at the time.  First, as explained above and as I explained to Richardson at the sentencing (see note 5, *supra*), the appeal waiver would have limited any appeal to an attack on the term of supervised release; but apart from the *Davis* claim (which I construe to be a challenge to the term of supervised release based on a generous reading of his motion), Richardson identifies no basis for challenging the term of supervised release I imposed, and I am not aware of one, non-frivolous or otherwise.[13] In any event, the fact that Richardson did not notify his lawyer that he was dissatisfied with or wanted to appeal the five-year term of supervised release (his affidavit does not suggest otherwise) is one indication that his lawyer's position that "I do not intend to file" an appeal was justified.  Second, with regard to the *Davis* claim, the Supreme Court did not decide *Davis* until June 2019 and the Second Circuit's did not decide *Barrett* (for the second time) until August 2019 (after the *Davis* decision was announced).  The law in the Second Circuit at the time of Richardson's November 20, 2018 sentencing held that even Hobbs Act robbery conspiracy constituted a crime of violence under both a hybrid categorical analysis (relying on a combination of a categorical analysis under § 924(c)(3)(A) and a "substantial risk" analysis

---

[13] The record demonstrates that the decision to impose five years of supervised release – two years more than the limitation in the appeal waiver – was well-supported by Richardson's history and characteristics, as I explained at sentencing and in the statement of reasons in the judgment, see ECF No. 5-1 at 111, 20.

under § 924(c)(3)(B)) and independently under a substantial risk analysis (later found

unconstitutional in *Davis*).  *See Barrett*, 937 F.3d at 129 (discussing Second Circuit's original

decision in same case, *United States v. Barrett*, 903 F.3d 166 (2018), later vacated by Supreme

Court and remanded for further consideration in light of *Davis*).[14]  And while *Johnson* and its

progeny may have provided the "tools to construct" a vagueness argument as to the residual

clause and other cases might have similarly provided some basis to argue that *attempted* Hobbs

Act robbery was not a crime of violence under the elements clause, Richardson's counsel "did

not err 'by failing to anticipate that the law might change, especially given the strong

presumption that counsel performed reasonably.'"  *McCarron*, 2020 WL 2572197, at *6 (in

Section 2255 motion making *Davis* claim, finding that counsel's decision not to appeal was

reasonable under *Strickland*'s performance prong where (1) defendant was sentenced in June

2018 for a drug conspiracy count, Hobbs Act robbery conspiracy, and possessing and

brandishing firearms during a crime of violence, predicated on the Hobbs Act robbery

conspiracy, in violation of  18 U.S.C. § 924(c)(1), (2) no appeal was taken, and (3) *Johnson* had

been decided three years prior to sentencing and provided all the tools necessary to construct a

vagueness argument) (quoting *Elliott v. United States*, No. 17-CR-128 (ARR), 2019 WL

6467718, at *1 (E.D.N.Y. Dec. 2, 2019), *reconsideration denied*, No. 17-CR-128 (ARR), 2020

WL 127640 (E.D.N.Y. Jan. 10, 2020) (reaching the same conclusion in similar

circumstances)).[15]

---

[14] I note that, even after *Davis* and its 2019 decision in *Barrett*, the Second Circuit continues to adhere to its view that substantive Hobbs Act robbery categorically constitutes a crime of violence under section 924(c)(3)(A).  *See United States v. Hill*, 890 F.3d 51, 53, 60 (2d Cir. 2018); *Barrett*, 937 F.3d at 128 ("The predicate offense for each of these crimes is *substantive* Hobbs Act robbery, which can be identified as a crime of violence under [section] 924(c)(3)(A) applying the traditional, elements only, categorical approach not at issue in *Davis*." (citing *Hill*)).
[15] I acknowledge that this is a fine line to draw, but it is one that must be drawn.  The timing of the decisions in *Johnson* and *Davis*, when overlaid on the dates of Richardson's plea and sentencing, demonstrate the space between the *availability* of an argument and whether a *failure to raise* that argument is objectively unreasonable under *Strickland*.  *See McCarron*, 2020 WL 2572197, at *6 ("[T]he standard for procedural default under *Bousley* is more

Richardson's motion also fails to demonstrate that counsel's performance fell below *Strickland*'s performance standard based on his failure to file an appeal.  That is so because Richardson *never requested* that his counsel file a notice of appeal.  Such an assertion is conspicuously absent from his affidavit, which states merely that his attorney "did not consult with [him] or otherwise discuss filing an appeal" and "had [his attorney] consulted with [him] about or otherwise discussed [his] right to appeal [he] would have filed an appeal because the sentence imposed upon [him] is greater than and different than that [he] bargained for in the plea agreement."  ECF No. 1 at 10.  That is insufficient to find that his counsel's performance fell below the constitutional floor because Richardson does not allege that he ever actually told his attorney to file a notice of appeal.  That fact alone distinguishes his case from *Flores-Ortega* and *Campusano v. U.S.*, 442 F.3d 770 (2d Cir. 2006); in both of those cases, the Supreme Court and Second Circuit found that counsel failed the performance prong where the attorneys ignored express requests from the defendants to appeal.  *See also Rodriguez v. United States*, No. 3:16-CV-1784 (JCH), 2019 WL 5552325, at *6 (D. Conn. Oct. 25, 2019) (no prejudice for failure to appeal when the defendant did not tell his attorney to file an appeal and where defendant had waived his right to appeal).

Further, even assuming that Richardson's counsel did fail to consult with him regarding an appeal, that too is insufficient to demonstrate deficient performance in these circumstances. In *Flores-Ortega*, the Supreme Court held that "counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for

---

exacting than *Strickland*'s requirement that counsel be reasonably competent.  Even if *Johnson* and *[D]imaya* made such a challenge *available* to the Defendant, it does not follow that the outcome of *Davis* was . . . so obvious that it was *objectively unreasonable* for counsel to rely on then-binding Second Circuit precedent." (internal citations and quotation marks omitted)).

appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." 528 U.S. at 480. "In making this determination, courts must take into account all the information counsel knew or should have known." *Id.* "[A] highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings." *Id.* "Even in cases when the defendant pleads guilty, the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights." *Id.* Again, the only aspect of Richardson's sentence that exceeded the terms he bargained for in the sense that it fell outside the appeal waiver was the 5-year term of supervised release, and there is no evidence that Richardson had any interest in appealing the term of supervised release. Further, as noted, I am aware of no non-frivolous grounds on which he could have done so (putting aside the possibility of anticipating a *Davis* claim, which is addressed above), and neither was Richardson's counsel, as he indicated at the sentencing. *See* ECF No. 6 at 5; ECF No. 5-1 at 117-18.

\* \* \*

I find that Richardson's Section 2255 motion must be denied because: (1) his challenge to his conviction and term of imprisonment under *Davis* is barred by his waiver of appellate and collateral review rights; (2) he has procedurally defaulted his challenge to his conviction and terms of imprisonment and supervised release under *Davis*; and (3) he has failed to state a plausible ineffective assistance of counsel claim. Further, there is no need to hold a hearing, because Richardson has set forth no "specific facts supported by competent evidence, raising

detailed and controverted issues that, if proved at a hearing, would entitle him to relief."

*Gonzalez*, 722 F.3d at 130.  I deny as moot Richardson's request to appoint appellate counsel.

## IV.   CONCLUSION

For the reasons set forth above, Richardson's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 (ECF No. 1) is DENIED.

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated:        Hartford, Connecticut
              February 25, 2021